J-S15017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2578 EDA 2021 |

Appeal from the Order Entered November 9, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-DP-0001591-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: A.Y.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2579 EDA 2021 |

Appeal from the Decree Entered November 9, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-AP-0000364-2021

BEFORE:  NICHOLS, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED JUNE 13, 2022**

Appellant, S.M. (Mother), appeals from the decree terminating her parental rights to her daughter, (A.M. a/k/a A.Y.M.), and the order changing A.M.'s permanency goal to adoption.  Upon review, we affirm.

A.M. was born in October 2019.  When A.M. was two days old and still at Temple University Hospital, the hospital requested the Philadelphia Department of Human Services (DHS) authorize A.M.'s discharge with Mother,

who had been involved with DHS since 2011.[1]  Trial Court Opinion, 2/23/22, at 1.  DHS caseworker Tiffany Tillman went to the hospital and met with Mother on October 7, 2019.  At that time, Mother did not have stable housing, which Ms. Tillman described as "up and down."  N.T., 11/3/21, at 74.  Mother had been living with her sister (Maternal Aunt), who offered to be a placement source, but Maternal Aunt "did not pass the clearance process."  Trial Court Opinion, 2/23/22, at 3.  Maternal Aunt offered her son and step-daughter as possible placement resources, but their home "was not appropriate due to structural damages and needed repairs."  *Id.*  Consequently, DHS declined to authorize A.M.'s discharge with Mother, and sought to place A.M. in foster care.  DHS obtained an order of protective custody on October 8, 2019.  After a hearing on October 18, 2019, the court adjudicated A.M. dependent.

DHS recommended the same parenting objectives Mother had with her other children, *i.e.*, maintain supervised visitation with her child; participate in drug and alcohol screening/treatment, attend parenting classes and mental health treatment; and obtain stable housing and proof of employment.  In subsequent permanency review hearings, the court found Mother to be minimally or moderately compliant with her parenting objectives.  On July 8, 2021, DHS filed a petition to involuntarily terminate Mother's parental rights and change A.M.'s permanency goal to adoption.  The trial court held hearings

---

[1] Mother did not have custody of her six older children.  *See* Trial Court Opinion, 2/23/22, at 2.

on August 13, November 3, and November 9, 2021.[2]  On November 9, 2021, the court entered the termination decree and order changing A.M.'s permanency goal to adoption.[3]  Mother timely appealed.

Mother presents two issues for our review:

1. Whether the trial court committed error by involuntarily terminating [Mother's] parental rights where such determination was not supported by clear and convincing evidence establishing grounds for termination under the Adoption Act, 23 Pa.C.S.A. §§ 2511 (a)(1), (a)(2), (a)(5) and (a)(8)?

2. Whether the trial court committed error by changing A.M.'s permanency goal from reunification with [Mother] to adoption without giving primary consideration to the developmental, physical, and emotional needs and welfare of the child as required by the Adoption Act, 23 Pa.C.S.A. § 2511(b)?

Mother's Brief at 5.

In considering Mother's issues,

our standard of review requires [us to] accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion.  Instead, a

---

[2] At the initial permanency review hearing on January 10, 2020, the court made of a finding of aggravated circumstances based on the termination of Mother's parental rights to her other children.  *See* 42 Pa.C.S.A. § 6302 (definitions).  The court took judicial notice of aggravated circumstances during termination proceedings.  N.T., 11/3/21, at 89.

[3] The court also terminated the parental rights of A.M.'s father, K.I., who appealed from the termination and goal change at 2510 EDA 2021 and 2509 EDA 2021.

decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As [the Supreme Court] discussed in *In re: R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)], there are clear reasons for applying an abuse of discretion standard of review in these cases. [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead, we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (some citations omitted).

Here, DHS had the burden to prove by clear and convincing evidence that its asserted grounds for termination were valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[T]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation omitted).

In her first issue, Mother argues she "made significant and consistent progress in meeting her established goals and objectives," and emphasizes the "global Covid 19 pandemic that shutdown many offices and services available" to her. Mother's Brief at 19. Mother claims DHS failed to provide

her with assistance and services to achieve her objectives. *Id.* at 20. Mother

also claims she was "involved with her daughter from the onset." *Id.* For

these reasons, Mother asserts the court erred in finding DHS presented clear

and convincing evidence of grounds for termination under 23 Pa.C.S.A. §

2511(a)(1), (2), (5), and (8).

In contrast, A.M.'s advocate states:

> At the time of the hearing, by her own admission, [Mother] was
> not ready to reunify with A.M., even though she was given over
> two years to achieve her objectives. Mother demonstrated a
> settled purpose to relinquish her rights and a distinct failure to
> perform parental duties, as well as continued incapacity to parent
> A.M., under Subsections 2511(a)(1) and (a)(2). Mother also failed
> to remedy the conditions that brought A.M. into care, despite the
> ample time she received to complete these objectives; therefore,
> termination was proper under Subsections 2511(a)(5) and (a)(8).
> The Trial Court made a finding of aggravated circumstances and
> found that DHS did not need to make reasonable efforts to reunify
> the family early in the case, so Mother's argument that DHS did
> not adequately assist Mother with meeting her objectives is
> entirely beside the point. In any event, DHS made efforts to assist
> Mother, and Mother fails to identify any objective for which she
> sought assistance from DHS and failed to receive it.

Participant's Brief at 30.[4]

DHS agrees Mother failed to perform parental duties and "maintain a

presence in Child's life." DHS Brief at 8. DHS also argues that the conditions

which caused A.M. to be in DHS's care "continued to exist: Mother continued

---

[4] A.M. was not quite two years old when termination proceedings began.
Consequently, the Child Advocate had no conflict representing A.M.'s best
interests and legal interests. *See* Trial Court Opinion, 2/23/22, at 32.

to lack both stable and appropriate housing and could not show that she was addressing her significant mental health issue." *Id.*

The trial court found grounds for termination under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8). We need only agree "as to any one subsection in order to affirm the termination of parental rights." *In re A.S.*, 11 A.3d 473, 478 (Pa. Super. 2010) (citation omitted). Therefore, we focus on the second subsection, which provides for termination when

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

Subsection (a)(2) "emphasizes the child's present and future need for 'essential parental care, control or subsistence necessary for his physical or mental well-being.'" *In re E.A.P.*, 944 A.2d 79, 82 (Pa. Super. 2008) (citations omitted). Grounds for termination under subsection (a)(2) are not limited to affirmative misconduct. *Id.* "Where the parent does not exercise reasonable firmness in declining to yield to obstacles, h[er parental] rights may be forfeited." *Id.* at 83 (citation omitted).

At the time of termination, A.M. had been "in continuous DHS care for [the] twenty-five months" since her birth. Trial Court Opinion, 2/23/22, at 14. The DHS caseworker, Ms. Tillman, testified that Mother never progressed beyond supervised visitation with A.M. N.T., 11/3/21, at 102. Also, Mother's

compliance with her other objectives. For example, Mother failed to provide clean drug test results to demonstrate her sobriety. *Id.* at 90, 97. Although Mother was diagnosed with persistent depressive disorder, she claimed she did not require treatment, but failed to provide confirmation. *See* Trial Court Opinion, 2/23/22, at 17 (trial court stating "Mother claimed she asked for documentation to be sent and the request was denied."). The trial court provided a detailed account of Mother's actions relative to her parenting goals. *See id.* at 13-20. The court found:

> This is not Mother's first involvement with DHS. She has had her rights to several other children involuntarily terminated. The same parenting concerns for Mother at the time her parental rights were previously terminated for her other children are still present today. Mother had ample opportunity to put herself in a position to adequately parent and care for [A.M.], but her repeated and continued incapacity has not been mitigated. Mother is unable to meet [A.M.]'s basic needs. Mother shows a passive interest in [A.M.] and does not utilize all available resources to enhance her parenting[.] The testimony of the DHS Social Workers was credible. The record established that Mother has demonstrated an unwillingness to acknowledge or remedy the causes of her incapacity to parent in order to provide [A.M.] with the parental care, control, or subsistence necessary for her physical and mental well-being. Mother admitted that she "would rather [Child] be with her father right now, since he's more stable." (N.T., 11/9/21, pgs. 128-129, 153). However, Father had previously reported that he is not able to care for [A.M.]. (N.T., 11/3/21, pgs. 77-78).

*Id.* at 20.

The record supports the trial court's findings, and we discern no error in its conclusion that termination was proper under Section 2511(a)(2). Thus, Mother's first issue does not merit relief.

In her second issue, Mother argues the record does not support termination under Section 2511(b), which requires that the trial court "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). When the trial court considers a child's needs and welfare, the "extent of any bond analysis . . . necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. 2008).

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re A.S.*, 11 A.3d at 483 (citations omitted).

Mother claims DHS presented "minimal, inconclusive, and superficial non-expert testimony" regarding A.M.'s needs and welfare. Mother's Brief at 21. Mother references her testimony that she "loves her daughter A.M. and wants to be reunified with her." *Id.* at 33. Mother also asserts that her witness from Tabor Children's Services, Jerry Riddick, "testified credibly" to A.M. having a "loving and appropriate parental bond" with Mother, and termination causing "irreparable harm" to A.M. *Id.* at 21.

A.M.'s advocate argues otherwise, citing Mother's "failure to meet her objectives and move beyond supervised visits" as the basis for Mother and A.M. not having a parent-child relationship. Participant's Brief at 31. A.M.'s

advocate emphasizes that A.M. "developed a parental bond with her foster mother, who met all of A.M.'s physical, medical, developmental, and emotional needs." *Id.* Similarly, DHS argues:

> Testimony also showed that the needs and welfare of [A.M.] would be served by terminating Mother's parental rights. Mother had inconsistent contact with [A.M.] over her life, and did not take steps to develop a nurturing parental bond with [A.M.], who formed healthy attachments with her foster family while placed. [A.M.] would not be irreparably harmed by terminating Mother's rights.

DHS Brief at 8.

We are not persuaded by Mother's argument. Mother's witness, Mr. Reddick, testified to being employed by Tabor Children's Services as a Resource Parent Support Worker. N.T., 11/9/21, at 62. Mr. Reddick was not assigned to Mother's case until June 25, 2021. *Id.* at 63. He testified that visits between Mother and A.M. "went really well," and "it's definitely a bonding, connected experience between [M]other and child." *Id.* at 74. He also described the relationship between Mother and A.M. as becoming "stronger and more consistent," and "getting better and better with each visit." *Id.* at 76, 81. However, Mr. Reddick admitted this was his first case as a visitation supervisor, and described Mother's visitation as "erratic." *See id.* at 109-111, 185.

As noted above, the trial court found the testimony of the DHS caseworkers to be credible. Ms. Tillman, Mother's DHS caseworker until April 2021, and Ms. Koslosky, the DHS caseworker who succeeded Ms. Tillman,

both testified that termination served A.M.'s needs and welfare. For example, Ms. Koslosky testified that it would be "traumatic" for A.M. to be removed from the care of Foster Mother, who is the only parent A.M. has known. N.T., 11/3/21, at 182.

In addressing A.M.'s needs and welfare, the trial court observed that Mother "never graduated beyond supervised visitation. Mother was inconsistent in her visitation. Mother's visits were twice weekly in the beginning of the case and were reduced to once weekly due to Mother not availing for consistent visits." Trial Court Opinion, 2/23/22, at 28-29 (citations omitted) (noting Mother's testimony "that all her absences throughout the case were because 'nobody wanted to work with [her]" and blam[ing her] absences on other people."); **see also id.** at 29 (DHS did not recommend unsupervised visits due to Mother's inconsistency with visits, lack of drug screens, and noncompliance with mental health treatment).

Relying on the testimony from the two DHS caseworkers, the court found A.M. has "a parental bond" with Foster Mother, "does not have a parent-child bond with Mother," and termination "would not cause irreparable harm to sever whatever relationship [A.M.] may have with Mother." **Id.** at 30. The court explained,

> [A.M.] does not depend on Mother as an essential caregiver, in large part due to Mother's inconsistency in visits. A.M is bonded with [Foster Mother], not Mother. [A.M.] has been in placement with [Foster Mother] for "pretty much her entire life," since she was an infant of less than one month old. [A.M.] is more strongly bonded to [Foster Mother] than Mother[, and Foster Mother] is the

> one who takes [A.M.] to appointments, meets her needs and provides [A.M.] "with everything she needed." Mother did not do anything outside of visitation to provide for or meet [A.M.]'s needs. Mother inquires about [A.M.'s] care and well-being on occasion but not consistently. Mother also did not attend appointments for [A.M.]. [A.M.]'s relationship with [Foster Mother] is "very loving" and [Foster Mother] is very attentive to A.M.'s] needs, provides [A.M.] with everything that she needs." [Foster Mother's] life "revolves around" [A.M.].

*Id.* at 30 (citations to notes of testimony omitted).

The trial court concluded A.M. "may recognize Mother, but there is no healthy beneficial necessary bond to preserve. It is in [A.M.]'s best interest to terminate Mother's parental rights and be freed for adoption." *Id.* at 32. The record supports the court's conclusion.

For the above reasons, we discern no error or abuse of discretion by the trial court in terminating Mother's parental rights and changing A.M.'s permanency goal to adoption.

Decree affirmed. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/13/2022

- 11 -